<u>**Not for Publication**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____

ARTISTIC TILE, INC.,

                    Plaintiff,

       v.

JPMORGAN CHASE BANK, N.A.,

                 Defendant.

_____

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

**Civil Action No. 24-7267 (SRC)**

**OPINION & ORDER**

<u>**CHESLER**</u>, District Judge

      Before the Court is Defendant JPMorgan Chase Bank, N.A.'s ("Chase") motion to dismiss Plaintiff Artistic Tile, Inc.'s ("Artistic Tile") amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (D.E. No. 10.) The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). Having considered the parties' submissions, the Court decides this matter without oral argument. <u>See</u> Fed. R. Civ. P. 78(b). For the reasons that follow, Defendant's motion will be GRANTED-IN-PART and DENIED-IN-PART.

**I.    BACKGROUND**

      This action concerns allegedly counterfeit checks drawn on Plaintiff's bank account and subsequently accepted for deposit by Defendant. Plaintiff Artistic Tile is a New Jersey corporation operating a tile design business. (D.E. No. 1, Ex. A to Notice of Removal ("Compl.").) Plaintiff

alleges that starting on or about May 24, 2021, and continuing until July 27, 2021, 36 fraudulent checks were drawn from Plaintiff's checking account at Valley National Bank ("Valley") and deposited into an account at Defendant Chase.  (Compl. ¶¶ 5, 8-9.)  The account at Chase was a business account opened in July 2019 by non-party Tatyana Spivak, the President of Adami, Inc. (Compl. ¶ 17.)  The 36 allegedly fraudulent checks were accepted by Chase at various Chase branch locations in New York and Florida.  (Compl. ¶¶ 8-9.)

According to Plaintiff, the 36 checks "(a) had forged and/or unauthorized signatures, (b) were drawn on duplicative checks numbers, [and] (c) named an unknown, fictitious and/or imposter payee 'ADAMI INC,' on counterfeit checks that were visibly different than Artistic Tile's checks."  (Compl. ¶ 7.)  Plaintiff alleges that the checks possessed facial irregularities "indicating desktop publishing was used in producing counterfeit checks," the checks bore an address for Adami, Inc. which was inconsistent with Adami Inc.'s address in Chase's records, and the checks bore "forged and/or unauthorized irregular handwritten corporate indorsements, visibly different than the authorized signature on Adami's signature card."  (Compl. ¶ 28.)  Moreover, the 36 checks were all issued from Artistic Tile "from which Adami, Inc. never received any prior check."  (Compl. ¶ 24.)

As alleged in the Complaint, the "amounts of the 36 fraudulent counterfeit checks accepted for deposit were highly inconsistent with Adami's behavior and transactional history and well above Adami's average deposit amount since the account was opened in July 2019."  (Compl. ¶ 23.)  Following the deposit of the checks into Adami Inc.'s account at Chase, "a highly unusual and suspicious rapid in-and-out pattern occurred with an almost immediate and massive outflow of funds from the Adami account via account and wire transfers, with over 30 international wire transfers to Poland, Serbia, Hungary, and China."  (Compl. ¶ 29.)

According to Plaintiff, the checks accepted by Chase ranged from deposit amounts between $169,828.55 to $175,890.90, and amounted to $5,183,424.67 in total.  (Compl. ¶¶ 19, 25.)  At issue are eleven checks.  Plaintiff alleges that Chase accepted for deposit: a fraudulent check at a Chase branch in North Miami Beach, Florida in the amount of $172,508.78 on July 7, 2021; a fraudulent check at a Chase branch in North Miami Beach, Florida in the amount of $172,280.65 on July 8, 2021; and a fraudulent check at a Chase branch in Sunny Isles Beach, Florida in the amount of $172,870.28 on July 9, 2021 ("the three Florida checks").  (Compl. ¶ 25.)  The three Florida checks accepted for deposit amounted to $517,659.71.  (Compl. ¶ 25.)  Plaintiff further alleges that following Chase's acceptance of the three Florida checks, Defendant subsequently accepted eight fraudulent checks for deposit at various Chase branch locations in New York amounting to $1,388,201.75 ("the eight New York checks").  (Compl. ¶ 25.)

Plaintiff alleges that on August 2, 2021, Artistic Tile informed Chase of the fraudulent checks.  (Compl. ¶ 13.)  According to Plaintiff, on August 4, 2021, non-party Tatyana Spivak, President of Adami, Inc., informed Chase that she did not authorize the deposits and transfers associated with the fraudulent checks at issue.  (Compl. ¶ 15.)[1]  Plaintiff asserts a single cause of action against Defendant under Fla. Stat. § 673.4041 for failure to exercise ordinary care and substantially contributing to Plaintiff's loss from the checks.  (Compl. ¶¶ 40-51.)  Plaintiff seeks recovery of the three Florida checks and eight New York checks accepted by Chase. (Compl. ¶ 47.)

Plaintiff originally brought this action against Defendant in the Superior Court of New Jersey, Law Division, Hudson County on May 23, 2024.  (D.E. No. 1, Notice of Removal, at 2.)

---

[1]    Plaintiff has filed suit against Valley alleging that Valley failed to exercise ordinary care in the handling of the Checks. Tatyana Spivak and Adami Inc. have filed suit against Defendant Chase alleging that Chase improperly allowed unauthorized deposits and withdrawals from the Adami account. (Compl. ¶¶ 6, 15.)  Both actions are currently pending.

Plaintiff filed an amended complaint the following day.  Defendant removed the case to this Court on June 26, 2024 based on diversity of citizenship.  (D.E. No. 1.)  On August 15, 2024, Chase filed the presently pending Motion to Dismiss.  (D.E. No. 10.)

## II.    LEGAL STANDARD

To withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Twombly, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 557.

"When reviewing a motion to dismiss, all allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom."  Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (internal quotation marks omitted).  However, the court is not required to accept as true "legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  The issue before the court on a Rule 12(b)(6) motion to dismiss "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  A district court ruling on a motion to dismiss generally "may not consider matters extraneous to the pleadings."  Id. at 1426.  However, the court may properly consider documents that form the basis

4

of a claim and documents that are "integral to or explicitly relied upon in the complaint."  Id.

(citations omitted).

## III.    DISCUSSION

### A.  Applicable Law

Plaintiff asserts a single cause of action under Fla. Stat. § 673.4041 ("UCC § 3-404" or

"Florida's UCC" or "revised UCC") [2] for the eleven checks at issue.  (Compl. ¶¶ 40-51.)  The

parties agree that the Uniform Commercial Code ("UCC") applies to the issues in this case.

However, Plaintiff argues that UCC § 3-404 under Florida law governs the entire claim whereas

Defendant argues that New York's version of the UCC applies to the portion of Plaintiff's claim

referencing the eight New York checks.  (D.E. No. 10-2 ("Def. Mov. Br.") at 5-8; D.E. No. 15

("Pl. Opp. Br.") at 3-5; D.E. No. 18 ("Def. Reply Br.") at 2.)  As Plaintiff's claim is based on UCC

provisions under state law, the Court must decide which state's law applies to Plaintiff's statutory

claim.[3]

In an action based on diversity of citizenship, a federal court applies "the substantive law

of the state whose laws govern the action."  Kleinknecht v. Gettysburg Coll., 989 F.2d 1360, 1365

(3d Cir. 1993).  "[A] district court must apply the choice of law rules of the forum state to determine

what law will govern the substantive issues of a case."  Mills v. Ethicon, Inc., 406 F. Supp. 3d 363,

---

[2]         The Florida legislature adopted the 1990 revisions of Articles 3 and 4 of the
Uniform Commercial Code ("UCC") as Florida Statutes Chapter 673, effective January 1, 1993.
References to "UCC § 3-404" throughout this Opinion correspond to Fla. Stat. § 673.4041.
[3]         While true that a choice of law analysis at a motion to dismiss stage may be
improper, "[s]ome choice of law issues may not require a full factual record and may be
amenable to resolution on a motion to dismiss."  Arlandson v. Hartz Mountain Corp., 792 F.
Supp. 2d 691, 700 (D.N.J. 2011) (citing Harper v. LG Elecs. USA, Inc., 595 F. Supp. 2d 486,
491 (D.N.J. 2009)).  The Court finds that a choice of law analysis here is proper because while
Florida has adopted the revisions of Articles 3 and 4 of the UCC, New York has not.  Given the
substantive differences of each state's version of the UCC, as discussed below, and the available
factual record, the Court finds a choice of law analysis at this stage amenable to resolution.

373 (D.N.J. 2019) (quoting <u>Warriner v. Stanton</u>, 475 F.3d 497, 499-500 (3d Cir. 2007)).  As New Jersey is the forum state, the Court will determine which state's substantive law applies using New Jersey's choice of law rules.  <u>Montich v. Miele USA, Inc.</u>, 849 F. Supp. 2d 439, 444 (D.N.J. 2012); <u>Collins v. MaryKay, Inc.</u>, 874 F.3d 176, 183 (3d Cir. 2017).  "Before a choice of law question arises, however, there must actually be a conflict between the potentially applicable bodies of law." <u>Schwartz v. Hilton Hotels Corp.</u>, 639 F. Supp. 2d 467, 471 (D.N.J. 2009) (quoting <u>Lucker Mfg. v. Home Ins. Co.</u>, 23 F.3d 808, 813 (3d Cir. 1994)).

Here, as both parties point out, an actual conflict exists between the laws of New York and Florida with respect to each state's adoption of the UCC.  At issue in this case is how both jurisdictions differ in treating checks bearing both forged signatures of a drawer and forged indorsements of a payee.  Plaintiff alleges that the checks at issue bore both forged signatures of Artistic Tile as the drawer on the checks and forged indorsements of Adami, Inc. as the payee on the checks. (Compl. ¶¶ 7, 19, 28.)

### i. New York Law

Unlike Florida, New York has not adopted the 1990 revisions to Articles 3 and 4 of the UCC. <u>See</u> <u>Clemente Bros. Contracting Corp. v. Hafner-Milazzo</u>, 23 N.Y.3d 277, 286 (2014) ("New York has not adopted the revised Model UCC").  New York's version of the UCC section at issue states:

> (1) An indorsement by any person in the name of a named payee is effective if
> (a) an impostor by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or
> (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or
> (c) an agent or employee of the maker or drawer has supplied him with the name of the payee intending the latter to have no such interest.

(2) Nothing in this section shall affect the criminal or civil liability of the person so indorsing.

N.Y. UCC § 3-405.

The case of <u>Perini Corp. v. First National Bank of Habersham County, Georgia</u>, demonstrates the approach courts analyzing claims under the pre-revised version of the UCC have taken in instances where checks bore both a forged signature of a drawer and a forged indorsement of a payee ("double forgeries"). 553 F.2d 398 (5th Cir. 1977). Courts treat these checks as checks bearing a forged drawer's signature, not a forged indorsement. <u>Perini</u>, 553 F.2d at 406. This classification results in the loss generally falling on the drawee bank and protecting the depositary bank from liability. <u>See</u> <u>Perini</u>, 553 F.2d at 406; 2 Law of Bank Deposits, Collections, & Credit Cards § 10.09.

### i. Florida Law

In contrast, Florida adopted the 1990 Revisions of Articles 3 and 4 of the UCC, effective January 1, 1993. <u>See</u> <u>Bufman Org. v. FDIC</u>, 82 F.3d 1020, 1026 n.5 (11th Cir. 1996). UCC § 3-404 as adopted in Florida provides in part:

> (a) If an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor, or to a person acting in concert with the impostor, by impersonating the payee of the instrument or a person authorized to act for the payee, an indorsement of the instrument by any person in the name of the payee is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.
>
> (b) If (i) a person whose intent determines to whom an instrument is payable (Section 3-110(a) or (b)) does not intend the person identified as payee to have any interest in the instrument, or (ii) the person identified as payee of an instrument is a fictitious person, the following rules apply until the instrument is negotiated by special indorsement:
>
> (1) Any person in possession of the instrument is its holder.

7

> (2) An indorsement by any person in the name of the payee stated in the instrument is effective as the indorsement of the payee in favor of a person who, in good faith, pays the instrument or takes it for value or for collection.

UCC § 3-404; Fla. Stat. § 673.4041.

As noted in the Official Comments to UCC § 3-404, the revised UCC "modifies the previous law in some respects." Cmt. 1, UCC § 3-404. Notably, the revised UCC shifted to a comparative fault approach in cases of double forgeries. The revised UCC § 3-404 applies "principles of comparative negligence so that allocation of loss between the drawee bank and the depository bank is based on the extent each contributed to the loss." The Law of Bank Deposits, § 10.09[2]. In particular, upon demonstrating that UCC § 3-404(a) or (b) applies, subsection (d) of UCC § 3-404 provides:

> "if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss."

UCC § 3-404(d).

Therefore, "by adopting a comparative fault approach, classification of the double forgery as either a forged signature or forged indorsement case is no longer necessarily determinative." The Law of Bank of Deposits § 10.09[2]. In essence, under the revised UCC § 3-404 a depository bank may now be held directly liable. Subsection (d) is intended to allow "the person who suffers loss as a result of payment of the check to recover from the person who failed to exercise ordinary care." Cmt. 3, UCC § 3-404. In some cases, "a likely defendant is the depository bank that took the check and failed to exercise ordinary care." Cmt. 3, UCC § 3-404. "This result differs sharply from the result under prior law, where double forgery cases were treated as forged drawer's

signature cases, with the depositary bank escaping liability[.]" The Law of Bank Deposits § 10.09[2].

Here, application of New York's UCC or Florida's UCC would lead to different results. As an initial matter, New York's version of UCC § 3-405 is generally asserted as an affirmative defense whereas courts in Florida have found revised UCC § 3-404 to "embody a cause of action for comparative negligence against a depositary bank" that fails to exercise ordinary care. Compare Kersner v. First Fed. Sav. & Loan Ass'n of Rochester, 695 N.Y.S.2d 369 (1999) with Se. Constr. Servs., LLC v. Wells Fargo Bank, N.A., 2016 WL 7334636, at *4 (M.D. Fla. July 27, 2016). If New York law were to apply under the prior version of the UCC, the checks would be classified as forged signature checks where Chase as the depositary bank would generally escape liability. See Perini, 553 F.2d at 406; Law of Bank Deposits, Collections, & Credit Cards § 10.09. However, if Florida law were to apply under revised UCC § 3-404, "classification of the double forgery as either a forged signature or forged indorsement case is no longer necessarily determinative." The Law of Bank of Deposits § 10.09[2]. Under Florida law, Plaintiff could assert a comparative negligence claim under UCC § 3-404(d) and "principles of comparative negligence [would apply] so that allocation of loss between the drawee bank and the depository bank is based on the extent each contributed to the loss." The Law of Bank Deposits, § 10.09[2].

Having found a conflict exists between the laws of New York and Florida, the Court must now apply New Jersey's choice of law rules to determine which state's substantive law governs. As adopted in New Jersey, UCC § 4-102(2) determines which jurisdiction's law governs disputes relating to bank deposits and negotiable instruments. UCC § 4-102(2) provides:

> The liability of a bank for action or non-action with respect to an item handled by it for purposes of presentment, payment, or collection is governed by the law of the place where the bank is located. ***In the case of action or non-action by or at a branch or***

> *separate office of a bank, its liability is governed by the law of the place where the branch or separate office is located.*

N.J.S.A. § 12A:4-102(b); UCC § 4-102(2) (emphasis added).

Comment 2 to UCC § 4-102(b) states that the subsection "is designed to state a workable rule for the solution of otherwise vexatious problems of the conflicts of laws . . . [and] applies to the initial act of a depositary bank in receiving an item and to the incidents of such receipt." Cmt. 2, N.J.S.A. § 12A:4-102.

Here, New Jersey's choice of law rules dictate that Florida's adoption of UCC § 3-404 is controlling as to the three Florida checks. The three Florida checks were negotiated and deposited at Chase branch locations in North Miami Beach, Florida, and Sunny Isles Beach, Florida, making Florida "the place where the branch or separate office [of Chase] is located" for the check deposits at issue. N.J.S.A. § 12A:4-102(b). (Compl. ¶¶ 9, 25.) Defendant does not dispute this, and thus concedes this point.

With respect to the eight New York checks, Plaintiff argues that Florida's UCC § 3-404 governs as the eight New York checks are consequential damages under UCC § 3-404(d). (Pl. Opp. Br. at 5-9, 14-15.) Plaintiff argues that it "is not asserting direct claims under Revised UCC § 3-404 for those subsequent eight [New York checks]" but instead states that "[a]s a result of Chase's lack of good faith, including with respect to the [three Florida checks] . . . it is also responsible for 'other damages . . . suffered as a proximate consequence,' which includes the amount of the [eight New York checks] . . . in the amount of $1,388,201.75" under Florida UCC § 3-404(d) and § 4-103(e). (Compl. ¶ 47; Pl. Opp. Br. at 14-15.)

Defendant argues that New York's UCC § 3-405 governs part of Plaintiff's claim referring to the eight New York checks because the checks were negotiated and deposited in New York. (Def. Mov. Br. at 5-8; Def. Reply Br. at 2.) Defendant states that Plaintiff cannot "circumvent this

determination by categorically claiming that the amount of the eight Checks are damages that were proximately caused by the three Checks negotiated in Florida" as "each Check represents a separate transaction under the UCC and is separately actionable." (Def. Reply Br. at 2.)

The Court agrees with Defendant. Florida's version of UCC § 3-404(d) provides:

> (d) With respect to an instrument to which subsection (a) or (b) applies, if a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument, **the person bearing the loss may recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss.**

UCC § 3-404(d) (emphasis added).

The UCC further provides that "[t]he measure of damages for failure to exercise ordinary care in handling an item is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care. If there is also bad faith it includes any other damages the party suffered as a proximate consequence." UCC § 4-103.

Although Plaintiff asserts a single statutory claim against Defendant under Florida UCC § 3-404 encompassing the eleven checks at issue, the eight New York checks were negotiated and deposited at Chase branch locations in Staten Island, NY and Brooklyn, NY. (Compl. ¶ 9.) Despite claiming that the eight New York checks are damages "suffered as a proximate consequence" of the three Florida checks, Plaintiff has not alleged any facts as to how Defendant's alleged failure to exercise ordinary care by accepting the three Florida checks "substantially contribute[d] to loss resulting from payment of the instrument" to encompass a loss of the eight New York checks. UCC § 3-404(d). Indeed, Plaintiff has not pled any facts to tie the transactions together to demonstrate in any way that the loss caused by the acceptance of the three Florida checks proximately caused any loss relating to the eight New York checks, and the Court will not accept

threadbare recitals "of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Therefore, the Court finds that New York law governs the portion of Plaintiff's claim referencing the eight New York checks. Significantly, Plaintiff does not even suggest that it has a cause of action under the New York version of UCC § 3-404 or 3-405, or that any cause of action under New York's version of the UCC is viable. Accordingly, Count I of the complaint brought under Florida's UCC § 3-404 is dismissed with prejudice in part with respect to the eight New York checks and thus, Defendant's motion is GRANTED in PART.

**B. Plaintiff's claim under UCC § 3-404 as to the three Florida checks**

**i. Overview of UCC § 3-404 under Florida law**

The next issue in this case is whether Plaintiff may assert a cause of action against Defendant as a depositary bank under Florida's UCC § 3-404 as to the three Florida checks. Defendant argues that even under Florida law, Plaintiff's claim fails as "Florida's Section 3-404 . . . only appl[ies] in circumstances of a forged 'endorsement' and not, as is the case here, checks that are counterfeit, *i.e.*, checks that bear a forged drawer's signature." (Def. Mov. Br. at 8-9.) Defendant also argues that the fact that the checks "must be treated as checks bearing a forged drawer's signature, as opposed to checks containing forged endorsements, is dispositive in Chase's favor" as it is "well-settled under the law [] that a depository bank is under no duty to verify the authenticity of a forged drawer's signature." (Def. Mov. Br. at 9; Def. Reply Br. at 4-5.) Defendant further asserts that Chase as a depositary bank is under no duty to detect or prevent fraud as it relates to Plaintiff, a non-customer. (Def. Mov. Br. at 10-11.) The Court disagrees.

The Court finds Defendant's arguments and cases relied on to be misguided. (Def. Mov. Br. at 8-13; Def. Reply Br. at 4-6.) Defendant cites several decisions in support of its arguments which do not involve claims brought under revised UCC § 3-404. (Pl. Opp. Br. at 11.) For

example, Defendant cites to three Florida cases to support its argument that banks generally do not owe a duty to non-customers to detect or prevent fraud. (Def. Mov. Br. at 11-13.) However, the cases cited involve common law negligence claims, not claims brought under revised UCC § 3-404 and thus, are inapplicable. Defendant also points to this Court's prior opinion in Oguguo v. Wells Fargo Bank, 2016 WL 3041853, at *1 (D.N.J. May 27, 2016), in support of its contention that there is a "wealth of case law that confirms that Chase owed no duty to Plaintiff to detect or prevent fraud perpetrated by one of its customers." (Def. Reply Br. at 5.) Defendant's reliance is misplaced because Oguguo involved an improperly pled presentment warranty claim under UCC § 4-208, not UCC § 3-404 and thus, the Court was not presented with an opportunity to review the duties associated with revised UCC § 3-404.

Defendant also cites to the Fifth Circuit case of Perini Corp. v. First National Bank of Habersham County, Georgia, for the proposition that a "check bearing a forged drawer's signature does not give rise to a claim against a depositary bank." 553 F.2d 398, 415 (5th Cir. 1977); (Def. Mov. Br. at 10.) However, Perini Corp., was decided before the 1990 revisions of Articles 3 and 4 as adopted in Florida and is not applicable.

Furthermore, as discussed above, Florida adopted the 1990 Revisions of Articles 3 and 4 of the UCC effective January 1, 1993. The revised UCC § 3-404 governs three scenarios where: (i) "an impostor, by use of the mails or otherwise, induces the issuer of an instrument to issue the instrument to the impostor" by impersonating a payee or a person "authorized to act for the payee"; (ii) "a person whose intent determines to whom an instrument is payable . . . does not intend the person identified as payee to have any interest in the instrument"; or (iii) the identified payee is a "fictitious person." UCC § 3-404(a)-(b); Fla. Stat. § 673.4041. The "person whose intent determines to whom an instrument is payable" of UCC § 3-404(b) is defined in UCC § 3-110(a)

as "the intent of the person, whether or not authorized, signing as, or in the name or behalf of, the issuer of the instrument."  UCC § 3-110(a).

Plaintiff relies on Florida's UCC § 3-404(b)(i) to argue that the "person whose intent determines to whom an instrument is payable" *i.e.*, the fraudsters who forged the counterfeit checks, did "not intend the person identified as payee," Adami Inc., "to have any interest in the instrument."  (Compl. ¶¶ 19, 42.)  Plaintiff further argues that the complaint clearly alleges that the indorsements on the three Florida checks were not authorized by Adami, Inc. and therefore, were forged indorsements, thus contending that this case involves a "double forgery." (Compl. ¶¶ 19, 28.)

As discussed above, the revised UCC § 3-404 applies "principles of comparative negligence so that allocation of loss between the drawee bank and the depository bank is based on the extent each contributed to the loss" and "classification of the double forgery as either a forged signature or forged indorsement case is no longer necessarily determinative."  The Law of Bank Deposits, § 10.09[2].  Upon demonstrating that one of the three scenarios identified in UCC § 3-404(a) or (b) applies and "a person paying the instrument or taking it for value or for collection fails to exercise ordinary care in paying or taking the instrument and that failure substantially contributes to loss resulting from payment of the instrument," subsection (d) of UCC § 3-404 allows the "the person bearing the loss" to "recover from the person failing to exercise ordinary care to the extent the failure to exercise ordinary care contributed to the loss."  UCC § 3-404(d). In some cases, "a likely defendant is the depository bank that took the check and failed to exercise ordinary care."  Cmt. 3, UCC § 3-404.

Indeed, courts analyzing revised UCC § 3-404 have held that a drawer can utilize UCC § 3-404 to bring a claim directly against a bank in double forgery situations.  See Versus Evil LLC

14

v. PNC Bank, N.A., 613 F. Supp. 3d 916, 924 (D. Md. 2020) (involving claims against a payee bank) ("Section 3-404 provides a cause of action against a party who fails to exercise ordinary care *in paying or taking a check*") (emphasis added); Se. Constr. Servs., LLC v. Wells Fargo Bank, N.A., 2016 WL 7334636, at *4 (M.D. Fla. July 27, 2016) (finding UCC § 3-404 to "embody a cause of action for comparative negligence against a depository bank that fails to exercise ordinary [care] when dealing with fraudulently-indorsed financial instruments"); Gina Chin & Assocs., Inc. v. First Union Bank, 256 Va. 59, 63 (1998) (finding depository bank's "conclusion that [UCC § 3-404] cannot be utilized by a drawer against the depository bank in a double forgery situation [to be] erroneous.").

The Court finds Gina Chin, to be directly on point.[4]  256 Va. at 62.  In Gina Chin, a corporate drawer alleged that its employee forged both its signature and the indorsement of a payee on various checks which were deposited into the employee's bank account.  Id.  The court held that the corporate drawer could assert a claim directly against the depository bank under UCC § 3-404 and noted that the revisions of Articles and 3 and 4 to the UCC, "changed the previous law by allowing 'the person bearing the loss' to seek recovery for a loss caused by the negligence of any person paying the instrument or taking it for value based on comparative negligence principles." Id.  The court further stated that "[n]othing in the statutory language indicates that, where the signature of the drawer is forged, the drawer cannot qualify as a 'person bearing the loss' or that the drawer is otherwise precluded from seeking recovery from a depository bank." Id.

Here, Defendant fails to demonstrate that Plaintiff is barred from asserting a claim under revised UCC § 3-404 against Defendant.  As Plaintiff correctly states, revised UCC § 3-404 does not exclude forged checks from application.  (Pl. Opp. Br. at 9.)  Comment 2 to UCC § 3-404

---

[4]    Whether or not the alleged forger is a stranger or an employee in a case is irrelevant and the statutory language of UCC § 3-404 does not make such distinction.

states that subsection (b) of UCC § 3-404 "is based in part on former Section 3-405(1)(b) and . . . covers cases in which . . . the payee is a real person but the drawer or maker . . . does not intend the payee to have any interest in the instrument. . . . It also applies to forged check cases."[5]

Moreover, Plaintiff alleges that Chase accepted for deposit counterfeit checks containing both forged signatures and forged indorsements. (Compl. ¶¶ 16, 19, 28.) Similar to <u>Versus Evil</u>,[6] Plaintiff alleges that unknown fraudsters produced counterfeit checks and "[n]one of the alleged forged checks were authorized by Plaintiff." 613 F. Supp. 3d at 924. Plaintiff alleges that the checks at issue possessed facial irregularities "indicating desktop publishing was used in producing counterfeit checks," and the 36 checks were all issued from Artistic Tile "from which Adami, Inc. never received any prior check." (Compl. ¶¶ 24, 28.)

Defendant's argument that "there is no 'forged' endorsement on any of the Checks as the payee on the Checks, Adami, Inc., negotiated and deposited the Checks into its account maintained at Chase in its name" is contradictory to the allegations in the complaint. (Def. Reply Br. at 3.) The complaint references allegations from the proposed Third Amended Complaint in the case by Tatyana Spivak and Adami, Inc. against Defendant noting that "a series of substantial fraudulent deposits" were made to the Adami, Inc. account without the President of Adami, Inc's "consent or

---

[5]    Both parties use "counterfeit" and "forged" interchangeably when referring to the checks at issue. The Official Comments describes situations involving counterfeit checks to constitute forged checks under UCC § 3-404. <u>See</u> Cmt. 2, UCC § 3-404 (Cases 4 and 5).

[6]    Defendant argues that Plaintiff's reliance on <u>Versus Evil</u> is misplaced because <u>Versus Evil</u>, involved recovery against a payee bank, not a depositary bank. 613 F. Supp. 3d at 924. The Court finds this distinction not to be dispositive. The court in <u>Versus Evil</u> did not engage in a discussion as to the liability of a payee bank versus a depositary bank nor hold that UCC § 3-404 could not be asserted against a depositary bank. The court merely stated that "Section 3-404 provides a cause of action against a party who fails to exercise ordinary care ***in paying or taking a check***" and found Plaintiff's allegations that "an unknown person or persons created a fake check drawn on Plaintiff's checking account, allowing that person to fraudulently withdraw more than $100,000" to be sufficient. 613 F. Supp. 3d at 924 (emphasis added).

knowledge." (Compl. ¶ 15.)[7]  As Tatyana Spivak has alleged that the checks were deposited into the Adami, Inc. without her authorization or knowledge, "the indorsements on the fraudulent checks were necessarily forged and/or unauthorized."  (Compl. ¶ 16; Compl. ¶ 28 (alleging that the checks bore "forged and/or unauthorized irregular handwritten corporate indorsements, visibly different than the authorized signature on Adami's signature card").)

As noted in Comment 3, UCC § 3-404(d) imposes a statutory duty to allow "the person who suffers loss as a result of payment of the check to recover from the person who failed to exercise ordinary care" and "[n]othing in the statutory language indicates that, where the signature of the drawer is forged, the drawer cannot qualify as a 'person bearing the loss' or that the drawer is otherwise precluded from seeking recovery from a depositary bank." Gina Chin, 256 Va. at 62.

Accordingly, the Court finds that Defendant, as a depositary bank, is not statutorily exempt from liability under Florida's UCC § 3-404 provided Plaintiff sufficiently alleges all elements of the claim.

### ii.  Plaintiff's allegations under UCC § 3-404

Thus, the remaining issue to be resolved is whether Plaintiff has plausibly stated a claim for relief under revised UCC § 3-404 with respect to the three Florida checks.

Defendant attempts to distinguish Plaintiff's claim from the scenarios in the Official Comments to revised UCC § 3-404.  However, contrary to Defendant's assertion that the "facts as alleged do not fit within the scope of Section 3-404," Plaintiff's allegations fit squarely within the scope of Florida's UCC § 3-404 and the scenarios listed therein.  (Def. Reply Br. at 5-6.)

---

[7]     The Court takes judicial notice of the fact that the filed Third Amended Complaint in the case of Tatyana Spivak and Adami, Inc. against Defendant supports these allegations.  (See D.E. No. 20-2, Third Amended Complaint.)

Case #4 of Comment 2 under UCC § 3-404 provides an example where UCC § 3-404(b)(i) ("a person whose intent determines to whom an instrument is payable . . . does not intend the person identified as payee to have any interest in the instrument") applies.  In this example, "Thief, a person who is not an employee or other agent of Corporation, obtains access to [a] computer and causes the check-writing machine to produce a check payable to Supplier Co." "a real person." Cmt. 2, UCC § 3-404.  "Thief then obtains possession of the check . . . indorses the check in the name 'Supplier Co.' and deposits it in an account in Depositary Bank."  Cmt. 2, UCC § 3-404. "Thief is the person whose intent determines to whom the check is payable, and Thief did not intend Supplier Co. to have any interest in the check."  Cmt. 2, UCC § 3-404.

Comment 3 to UCC § 3-404 references this example by stating:

> *[I]n some forged check cases the depositary bank is in a position to detect the fraud.* Those cases typically involve a check payable to a fictitious payee *or a payee not intended to have an interest in the check.* Subsection (d) applies to those cases*. If the depositary bank failed to exercise ordinary care and the failure substantially contributed to the loss, the drawer* . . . [in Case #4 of Comment 2] *has a cause of action against the depositary bank under subsection (d).* Comment 4 to Section 3-405 can be used as a guide to the type of conduct that could give rise to recovery under Section 3-404(d).

Cmt. 3, UCC § 3-404 (emphasis added).

Comment 4 to Section 3-405 provides the following:

> Suppose in [example case of UCC § 3-405] that the check is not payable to an obscure "Supplier Co." but rather to a well-known national corporation. In addition, the check is for a very large amount of money. Before depositing the check, Employee opens an account in Depositary Bank in the name of the corporation and states to the person conducting the transaction for the bank that Employee is manager of a new office being opened by the corporation. Depositary Bank opens the account without requiring Employee to produce any resolutions of the corporation's board of directors or other evidence of authorization of Employee to act for the corporation. A few days later, the check is deposited, the account is credited, and the check is presented for payment. *After Depositary*

> **Bank receives payment, it allows Employee to withdraw the credit by a wire transfer to an account in a bank in a foreign country. The trier of fact could find that Depositary Bank did not exercise ordinary care and that the failure to exercise ordinary care contributed to the loss suffered by Employer.** The trier of fact could allow recovery by Employer from Depositary Bank for all or part of the loss suffered by Employer.

Cmt. 4, UCC § 3-405 (emphasis added).

Here, Plaintiff's allegations are sufficient.  As described above, Plaintiff alleges that Chase received and accepted for deposit counterfeit checks containing both forged signatures and forged indorsements.  (Compl. ¶¶ 16, 19, 28.)  Plaintiff states the payee, Adami, Inc. was not known to Plaintiff as "Adami, Inc. never received any prior check" from Plaintiff.  (Compl. ¶ 24.)  Plaintiff states that the "fraudsters who created the fraudulent counterfeit checks did not intend Adami, Inc. to have any interest in the instruments" satisfying Florida's UCC § 3-404(b)(i).  (Compl. ¶ 42.) Having demonstrated UCC § 3-404(b) applies, Plaintiff further alleges a comparative negligence claim under UCC § 3-404(d) and provides specific allegations that "Chase failed to exercise good faith, a prerequisite to application of the comparative negligence loss allocation under UCC § 3-404."  (Compl. ¶ 46.)  For example, Plaintiff states "[a]s depository, Chase failed to exercise ordinary care and good faith in accepting for deposit each of the fraudulent checks and in failing to investigate each . . . which bore multiple, obvious suspicious circumstances, irregularities, and warning signs of fraud[.]"  (Compl. ¶ 31.)  According to Plaintiff, the checks bore an address for Adami, Inc. which was inconsistent with Adami Inc.'s address in Chase's records, and the "forged and/or unauthorized irregular handwritten corporate indorsements" were "visibly different than the authorized signature on Adami's signature card."  (Compl. ¶ 28.) Moreover, the checks contained a "memo" designation on the bottom left of the check but the corresponding line for "memo" "is actually drawn well above the word 'memo,' another facial irregularity and serious

warning sign of a fraud, indicating desktop publishing was used in producing counterfeit checks."
(Compl. ¶ 28.)  Plaintiff states the "amounts of the 36 fraudulent counterfeit checks accepted for
deposit were highly inconsistent with Adami's behavior and transactional history and well above
Adami's average deposit amount since the account was opened in July 2019." (Compl. ¶ 23.)
Moreover, Plaintiff alleges that Defendant Chase "acted with knowledge and disregard of
suspicious circumstances in repeatedly accepting for deposit fraudulent counterfeit checks,"
"failed to act with ordinary care and good faith in opening and operating the Adami, Inc. account,
in accepting the fraudulent checks for deposit," [and] "accepted these large fraudulent counterfeit
checks for deposit into the account despite all the foregoing obvious suspicious circumstances,
irregularities, and warning signs of fraud." (Compl. ¶¶ 45, 48, 50.)  The complaint indicates that
despite Adami, Inc.'s bank profile on Chase's "Know Your Customer" portal indicating that no
"Electronic Funds Transfers (wires, ACH, IAT)" would occur, "an almost immediate and massive
outflow of funds from the Adami account via account and wire transfers" occurred. (Compl. ¶¶
17, 29.)  In short, accepting the facts alleged as true and giving all reasonable inferences in favor
of Plaintiff, the Court finds these allegations, if proven, create an issue of fact for a jury to
determine whether Defendant failed "to exercise ordinary care" in accepting the check deposits
and "that failure substantially contribute[d] to loss resulting from payment of the instrument."
UCC § 3-404(d).

Defendant argues that Plaintiff's references to the Official Comments "solely address a set
of facts that are not present here, *i.e.*, a *dishonest employee* opening an account in the name of a
fictitious payee or in the account of a payee with a substantially similar name" and thus appears to
contend that revised UCC § 3-404 is restricted to situations involving employees.  (Def. Reply Br.
at 4.)  This is incorrect.  Although the example in Comment 4 to revised UCC § 3-405 references

an employee opening a bank account, the fact that the fraudsters' identities in the instant matter are unknown is not dispositive.  Indeed, Comment 3 to UCC § 3-405 explicitly states that in contrast to UCC § 3-405, "Section 3-404(b) is not limited to cases of employee fraud."  Comment 4 to UCC § 3-405 referencing employee scenarios is to be used as a "guide to the type of conduct that could give rise to recovery under Section 3-404(d)." Cmt. 3, UCC § 3-404.   Comment 4 to UCC § 3-405 emphasizes that "[f]ailure to exercise ordinary care is to be determined in the context of all the facts relating to the bank's conduct with respect to the bank's collection of the check. If the trier of fact finds that there was such a failure and that the failure substantially contributed to loss, it could find the depositary bank liable to the extent the failure contributed to the loss." Cmt 4., UCC § 3-405.

## IV.    CONCLUSION

The Court finds Plaintiff's allegations sufficient to withstand a motion to dismiss with respect to the three Florida checks under Florida's UCC § 3-404(b)(i) and (d).[8]  Accordingly, Defendant's motion is DENIED in PART with respect to the three Florida checks.  For the

---

[8]    However, the Court rejects Plaintiff's argument that UCC § 3-404(a) applies.  (Pl. Opp. Br. at 8.)  UCC § 3-404(a) applies if "an imposter induces the drawer of a check to issue it to the impostor, by impersonating the payee or someone authorized to act for the payee."  Moore v. Bank of Am., NA, 2019 WL 2281599, at *4 (D.N.J. May 28, 2019); UCC § 3-404(a).  Here, Plaintiff alleges that the "fraudsters were impostors of Adami, Inc., whose creation of counterfeit checks constituted use of the mails or otherwise to induce the issuer of an instrument to issue the instrument to the imposter under UCC § 3-404(a)."  (Compl. ¶ 43.)  The Court rejects this claim. The complaint's factual allegations demonstrate that Plaintiff in fact did not issue any checks to the imposters as the checks were counterfeit checks bearing both forged signatures of Plaintiff and forged indorsements of Adami, Inc.  Contrary to Plaintiff's assertion, the allegation that the fraudsters' "creation of counterfeit checks constituted use of the mails or otherwise" does not then satisfy the requirement that the issuer of an instrument was induced to issue the check to the imposters of Adami, Inc.  (Pl. Opp. Br. at 9.)  Plaintiff's reliance on Green Valley Villas W. Condo. Ass'n v. Washington Fed. Bank, is unpersuasive because in Green Valley, the imposter induced an issuer to issue checks by submitting forged invoices to the issuer. 2024 WL 1702226, at *1 (D. Ariz. Apr. 19, 2024).  Here, Plaintiff did not issue any checks.

foregoing reasons, it is hereby **ORDERED** that Defendant's motion to dismiss (D.E. No. 10) is

**GRANTED-IN-PART and DENIED-IN-PART.**

_____s/ Stanley R. Chesler_____
STANLEY R. CHESLER, U.S.D.J.

Dated: November 5, 2024