**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|  |  |
|---|---|
| ARTISTIC TILE, INC., | :     **Civil Action No. 24-7267 (SRC)** |
|        Plaintiff, | :     **OPINION & ORDER** |
|        v. | : |
| JPMORGAN CHASE BANK, N.A., | : |
|        Defendant. | : |

---

**CHESLER**, District Judge

Before the Court is Plaintiff Artistic Tile, Inc.'s ("Artistic Tile") motion for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). (D.E. No. 46.) Having considered the parties' submissions, (D.E. No. 46-3 ("Pl.'s Mov. Br."); D.E. No. 55 ("Def.'s Opp. Br."); D.E. No. 56 ("Pl.'s Reply Br.")), the Court decides this matter without oral argument. See Fed. R. Civ. P. 78(b). For the reasons that follow, Plaintiff's motion will be DENIED.

## I.  BACKGROUND

### Factual Background

The circumstances surrounding this case are well known to the parties and set forth in this Court's prior Opinion, (D.E. No. 26). In brief, this action concerns allegedly counterfeit checks

drawn on Plaintiff's bank account.  Plaintiff Artistic Tile is a New Jersey corporation operating a tile design business.  (D.E. No. 1, Amended Complaint, Ex. A to Notice of Removal ("Compl.").) Plaintiff alleges that starting on or about May 24, 2021, and continuing until July 22, 2021, 36 fraudulent checks were drawn on Plaintiff's checking account at Valley National Bank ("Valley") and deposited into an account at Defendant JPMorgan Chase Bank, N.A. ("Chase").  (Compl. ¶¶ 5, 8-9.)  The account at Chase was a business account opened in July 2019 by non-party Tatyana Spivak, the President of Adami, Inc.  (Id. ¶ 17.)  These checks were drawn on Plaintiff's account at Valley and deposited into Adami, Inc.'s account at Chase, unbeknownst to Adami, Inc.

According to the Amended Complaint, the first 24 fraudulent checks were deposited at Chase branch locations in New York between May 24, 2021, and July 6, 2021.  (Id. ¶ 9.)  The next three fraudulent checks were deposited at Chase branch locations in Florida between July 7, 2021, and July 9, 2021.  (Id.)  The remaining nine checks were deposited at Chase branch locations in New York between July 9, 2021 and July 22, 2021.  (Id.)  After Plaintiff reported the counterfeit checks to Valley on July 24, 2021, Valley successfully placed a "hold" on the last of the 36 fraudulent checks deposited, thus limiting Plaintiff's actual loss to 35 checks.  (Compl. ¶¶ 11, 14.)[1] On August 2, 2021, Plaintiff provided written notice of the fraudulent checks to Chase and on August 4, 2021, Adami, Inc. informed Chase of the unauthorized transactions.  (Id. ¶¶ 13, 15.) Prior to these dates, neither Plaintiff nor Adami, Inc. had notified either Valley or Chase that the checks were fraudulent.

---

[1] Plaintiff filed suit against Valley in the Superior Court of New Jersey alleging that Valley failed to exercise ordinary care in the handling of the checks. Tatyana Spivak and Adami, Inc. filed suit against Chase in the Eastern District of New York alleging that Chase improperly allowed unauthorized deposits and withdrawals from the Adami account.  Both actions are currently pending.  (Compl. ¶¶ 5, 6.)

The crux of Plaintiff's Amended Complaint is that Defendant failed to exercise ordinary care and good faith in accepting the three fraudulent checks in Florida between July 7, 2021, and July 9, 2021, ("the three Florida checks"), and the eight subsequent checks in New York between July 9, 2021, and July 22, 2021 ("the eight New York checks"), in violation of Uniform Commercial Code ("UCC") § 3-404, codified as Florida Statutes section 673.4041. (Id. ¶¶ 9, 40-51.) Relevant to this motion, Plaintiff alleges that the eight New York checks are recoverable as consequential damages. Under Florida's UCC § 4-103, the measure of damages for failure to exercise ordinary care "is the amount of the item reduced by an amount that could not have been realized by the exercise of ordinary care" but "[i]f there is also bad faith [the measure of damages] includes any other damages the party suffered as a proximate consequence." Fla. Stat. §§ 674.103(5), 673.4041(4).

**Procedural History**

Plaintiff brought this action against Defendant in the Superior Court of New Jersey, Law Division, Hudson County on May 23, 2024. (D.E. No. 1, Notice of Removal, at 2.) Plaintiff filed an Amended Complaint the following day. Defendant removed the case to this Court on June 26, 2024, based on diversity of citizenship. (D.E. No. 1.) Thereafter, Chase filed a motion to dismiss the Amended Complaint. (D.E. No. 10.) In November 2024, this Court entered an Opinion and Order denying Chase's motion to dismiss with respect to the three Florida checks, finding that Plaintiff sufficiently alleged a claim as to the three Florida checks under UCC § 3-404(b)(i) and (d) (Fla. Stat. §§ 673.4041(2) and (4)), but granting Chase's motion to dismiss with respect to the eight New York checks. (D.E. No. 26.)

In granting Defendant's motion to dismiss with respect to the eight New York checks, this Court noted that Plaintiff had not "alleged any facts as to how Defendant's alleged failure to

3

exercise ordinary care by accepting the three Florida checks 'substantially contribute[d] to loss resulting from payment of the instrument' to encompass a loss of the New York checks" under UCC § 3-404(d) (Fla. Stat. § 673.4041(4)) and also failed to plead "any facts to tie the transactions together to demonstrate in any way that the loss caused by the acceptance of the three Florida checks proximately caused any loss relating to the eight New York checks" as required under UCC § 4-103(e) (Fla. Stat. § 674.103(5)).  (D.E. No. 26 at 11.)  In the Amended Complaint, Plaintiff failed to provide sufficient factual allegations describing how Defendant's conduct amounted to bad faith under the UCC or how the eight New York checks were damages suffered as a proximate consequence of Defendant's alleged bad faith in handling the three Florida checks.  On January 10, 2025, Plaintiff moved before this Court for leave to amend the complaint pursuant to Federal Rule of Civil Procedure 15(a)(2), claiming the pleading deficiencies noted in the Court's November Opinion had been cured.  (D.E. No. 32.)  During oral argument on April 23, 2025, this Court noted that Plaintiff's proposed second amended complaint did not contain specific allegations to support a claim of bad faith under the UCC and denied Plaintiff's motion.  (D.E. No. 42.)  Still, the Court granted Plaintiff leave to replead within 30 days.  (Id.)  On May 23, 2025, Plaintiff, again, moved before this Court for leave to amend the complaint.[2]  (D.E. No. 46.)

**Motion for Leave to Amend the Complaint**

---

[2] While this Court indicated in its prior Opinion and Order that the dismissal was with prejudice, the Court recognized that this was in error and Plaintiff should have been granted leave to replead. For this reason, the Court carefully reviewed Plaintiff's Proposed Second Amended Complaint, (D.E. No. 32-3), but concluded that it was deficient.  Still, the Court granted Plaintiff leave to replead within 30 days.  Now, having carefully reviewed Plaintiff's Proposed Third Amended Complaint, the Court concludes that the Proposed TAC is still deficient, and hereby denies Plaintiff's motion for leave to amend the complaint on grounds of futility, as discussed below.

As in Plaintiff's prior submissions, the Proposed Third Amended Complaint, (D.E. No. 46-5 ("Proposed TAC")), alleges that the eight New York checks are recoverable as consequential damages under the UCC.[3]  To support this claim, the Proposed TAC includes new allegations to "show the relationship between Chase's failure to exercise ordinary care and good faith in accepting the three fraudulent checks in Florida and Artistic Tile's subsequent losses as other damages that it suffered as a proximate consequence of Chase's bad faith[.]"  (Pl.'s Mov. Br. at 10.)  Plaintiff also submits an expert opinion as an exhibit to its motion which the Court cannot consider on this motion.  In essence, Plaintiff alleges that Defendant failed to exercise good faith "in accepting for deposit each of the fraudulent checks and in failing to investigate each of the fraudulent checks" despite "multiple, obvious suspicious circumstances."  (Proposed TAC ¶¶ 50, 71.)  The Proposed TAC also provides details of subsequent international wire transfers from the Adami, Inc. account.  (Id. ¶¶ 39-43.)

According to the Proposed TAC, Defendant's conduct constitutes bad faith which resulted in the acceptance of the eight New York checks because "[h]ad Chase exercised ordinary care and good faith in accepting for deposit the three checks deposited in Florida, the fraud scheme would have been discovered and concluded, with Chase promptly placing a hold or freeze on the Adami account, preventing any further fraudulent check deposits[.]"  (Id. ¶ 61.)  Plaintiff suggests that it was "reasonably foreseeable that the Adami check fraud scheme would continue as a result of Chase's bad faith conduct in failing to detect the three fraudulent checks accepted for deposit in Florida."  (Id. ¶ 62.)

---

[3] Plaintiff alleges two alternative theories for quantifying the amount of consequential damages: (i) the amount of the eight New York checks or (ii) the amount of the thirteen subsequent international wire transfers from Adami, Inc.'s account. The Court's analysis is the same under either theory.

## II.    LEGAL STANDARD

Amendments to pleadings are governed by Federal Rule of Civil Procedure 15.  Under Rule 15(a)(1), a "party may amend its pleading once as a matter of course" within "21 days after serving it, or . . . 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  However, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  District courts "should freely give leave to amend when justice so requires."  Schomburg v. Dow Jones & Co., 504 F. App'x 100, 103 (3d Cir. 2012) (citing Rule 15(a)(2)) (internal alterations omitted).  The Third Circuit favors allowing amendments to ensure claims are decided on the merits.  See Dole v. Arco Chem. Co., 921 F.2d 484, 487 (3d Cir. 1990).  Leave to amend is to be freely granted unless there is a reason for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  Foman v. Davis, 371 U.S. 178, 182 (1962).  "Futility 'means that the complaint, as amended, would fail to state a claim upon which relief could be granted.'"  Burtch v. Milberg Factors, Inc., 662 F.3d 212, 231 (3d Cir. 2011) (quoting Great W. Mining & Min. Co. v. Fox Rothschild LLP, 615 F.3d 159, 175 (3d Cir. 2010)).  In other words, a claim is "futile" if it would not survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." Id.  On a Rule 12(b)(6) motion, the Court must accept as true the well-pleaded facts of a complaint and any reasonable inference that may be drawn from those facts but need not credit conclusory statements couched as factual allegations.  See id.  ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The issue before the Court on a Rule 12(b)(6) motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Burlington Coat Factory Secs. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).  "[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." Id. at 1426.  The Court, however, may properly consider documents that form the basis of a claim and documents that are "integral to or explicitly relied upon in the complaint." Id.  (citations omitted).

## III.    DISCUSSION

Plaintiff argues the motion for leave to amend the complaint should be granted because the Proposed TAC "contains additional allegations regarding Chase's bad faith conduct involving the three Florida deposits."  (Pl.'s Mov. Br. at 19.)  In opposition, Defendant argues that granting Plaintiff's motion for leave to amend would be futile because: (i) the Proposed TAC fails to allege facts sufficient to demonstrate bad faith under the UCC; (ii) Plaintiff fails to allege facts sufficient to demonstrate proximate causation; (iii) Plaintiff's theory of consequential damages is unsupported as a matter of law; (iv) Plaintiff seeks to improperly impose liability based on alleged violations of the Bank Secrecy Act; and (v) the alternative damages theory is meritless.

Upon review of the Proposed TAC, the Court finds that granting Plaintiff's motion for leave to amend would be futile because Plaintiff fails to sufficiently allege that Defendant's acceptance of the three Florida checks plausibly rises to bad faith which proximately caused the

acceptance of the eight New York checks.  Rather, as this Court previously held, Plaintiff has made a plausible demonstration that Chase may have been negligent in accepting the three Florida checks for deposit, but this is a far cry from alleging bad faith.

### A. Bad Faith under the UCC

When there is also bad faith shown, the measure of damages for failure to exercise ordinary care "includes any other damages the party suffered as a proximate consequence."  Fla. Stat. § 674.103(5).  While "bad faith" is not defined, "the connotation is the absence of good faith."  Fla. Stat. § 674.103, cmt. 6.  Under UCC § 3-103, "good faith" is defined as "honesty in fact and the observance of reasonable commercial standards of fair dealing."  Fla. Stat. § 673.1031(1)(d). When assessing good faith, "[t]he 'honesty in fact' component is subjective" whereas "the fair-dealing component is objective." Regions Bank v. Kaplan, 2021 WL 4852268, at *11 (11th Cir. Oct. 19, 2021) (quoting Any Kind Checks Cashed, Inc. v. Talcott, 830 So. 2d 160, 164–65 (Fla. Dist. Ct. App. 2002) (citation omitted)).  As noted in the Official Comments, "if bad faith is established the rule opens to allow the recovery of other damages whose 'proximateness' is to be tested by the ordinary rules applied in comparable cases."  Fla. Stat. § 674.103, cmt. 6.

As a preliminary matter, the factual allegations must support a plausible inference that Defendant acted in bad faith *in accepting the three Florida checks for deposit*.  However, most of the Proposed TAC does not focus on Defendant's acceptance of the three Florida checks. Rather, Plaintiff's allegations appear to concern Chase's general operation of the Adami, Inc. account and the deposit of checks "at multiple branch locations in New York and Florida" "with over 30 international wire transfers[.]"  (Proposed TAC ¶ 71.)   The Court may only consider allegations regarding other wire transfers or checks to the extent that they may demonstrate bad faith on the part of Chase in accepting and handling the three Florida checks, since it is Plaintiff's

contention that Defendant's alleged bad faith, in accepting the three Florida checks, was the proximate cause of its losses resulting from subsequent deposits of the eight New York checks.

### i. Honesty in Fact

The Eleventh Circuit has held that the honesty in fact component of good faith "is subjective, requiring 'actual, not constructive, knowledge of the wrongdoing tantamount to dishonesty or bad faith.'" Regions, 2021 WL 4852268, at *11 (quoting Any Kind, 830 So. 2d at 164–65 (citation omitted)). Under Florida law, "[a] bank's lack of honesty must result from actual knowledge, not 'should have known' evidence." Regions Bank, etc. v. Kaplan, 2016 WL 1592752, at *19 (M.D. Fla. Apr. 18, 2016) (citing Espirito Santo Bank of Florida v. Agronomics Fin. Corp., 591 So. 2d 1078, 1079-80 (Fla. 3d DCA 1991)) (bank's honesty in handling items measured by actual, not constructive knowledge of wrongdoing), aff'd sub nom. 2021 WL 4852268 (11th Cir. Oct. 19, 2021).

Here, Plaintiff has not set forth sufficient facts to plausibly suggest that Defendant failed to act with "honesty in fact" in accepting the three Florida checks for deposit. Fla. Stat. § 673.1031(1)(d). The core of Plaintiff's claim is that Chase, as depositary, failed to exercise good faith "in accepting for deposit each of the fraudulent checks and in failing to investigate each of the fraudulent checks, which bore multiple, obvious suspicious circumstances, irregularities, and warning signs of fraud, particularly given the large nature of the deposits which required even more heightened scrutiny." (Proposed TAC ¶ 50.) Plaintiff alleges that Chase "acted with knowledge and disregard of suspicious circumstances" in:

> repeatedly accepting for deposit fraudulent counterfeit checks from the same drawer/payor, drawn on visibly counterfeit checks, in large amounts, massively inconsistent with Adami's transactional history and behavior, on handwritten temporary/counter deposit slips, with forged and/or unauthorized irregular handwritten corporate indorsements, at multiple branch locations in New York and Florida,

among other obvious suspicious circumstances, irregularities, and warning signs of fraud, including the highly unusual and suspicious rapid and massive outflow of funds from the account via account and wire transfers, with over 30 international wire transfers to Poland, Serbia, Austria, and China.

(Id. ¶ 71.)  Plaintiff further alleges that "Chase failed to follow its own procedure in determining whether a counterfeit check had been deposited at Chase by comparing any of the counterfeit checks herein, including the three checks deposited in Florida, with prior checks drawn on Artistic Tile's PAR 9310 account that Chase had accepted for deposit." (Id. ¶ 51.)

The allegations in the Proposed TAC fail to support a plausible inference that Chase had actual knowledge of any "wrongdoing tantamount to dishonesty or bad faith."[4]  See Regions, 2021 WL 4852268, at *11.  First, Plaintiff's allegation that Chase failed to investigate the allegedly fraudulent checks, despite having knowledge of suspicious circumstances, is contradicted by other allegations in the Proposed TAC.  (Proposed TAC ¶¶ 50-51.)  Plaintiff alleges that "since May of 2021 Chase was aware of extensive suspicious activity involving the Adami account" yet "Chase turned a blind eye, left the account open, and did nothing to resolve the ongoing suspicious activity."  (Id. ¶ 43.)  Plaintiff alleges that "[n]either the deposit slips nor the fraudulent checks bear any indication that approval was sought or obtained, or if it was, the supervisor or a manger

---

[4] Plaintiff's citation to Savings Bank Trust Co. v. Federal Reserve Bank of New York, 738 F.2d 573, 574 (2d Cir. 1984) is unpersuasive as this case was decided before the UCC modified its definition of good faith, does not discuss Florida law, and is not analogous to the facts of this case.  (Pl.'s Mov. Br. at 14.)  Furthermore, in so holding that "knowledge and disregard of suspicious circumstances are sufficient to vitiate an assertion of good faith where negotiable instruments are concerned" the Second Circuit cited In re Legel Braswell Government Securities Corp., 695 F.2d 506 (11th Cir. 1983) which relied upon a definition of good faith specific to New York law under a non-uniform provision of New York's UCC.  See 695 F.2d at 511-12.

Plaintiff's citation to Appley v. West, 832 F.2d 1021, 1031 (7th Cir. 1987) is also unpersuasive.  In that case, the Seventh Circuit did not analyze good faith under the UCC, but rather under the Uniform Fiduciaries Act, and the plaintiff alleged the bank had "actual knowledge" of the fiduciary's breach of his obligations.

did not make any inquiry and investigate obvious, multiple irregularities and suspicious circumstances[.]"  (Id. ¶ 45.)  However, the Court finds that a review of the new allegations in the Proposed TAC demonstrate that Defendant, in fact, took action to address the ongoing activity in the Adami, Inc. account.  (Proposed TAC ¶¶ 23-52.)

Plaintiff alleges that, after an individual impersonating Tatyana Spivak called Chase in early June 2021 to release a hold on three checks, "Chase's employee compared the fraudulent checks deposited with a legitimate check . . . [previously drawn on Plaintiff's account] that had been made payable to a legitimate payee and deposited into a different account at Chase[.]"  (Id. ¶ 35.)  Plaintiff relies on Chase's internal fraud notes to support this allegation and attaches Chase's notes as an exhibit to the Proposed TAC.[5]  Chase's notes reflect that the checks were not consistent with one another and the "[i]ssuer refused to verify check."  (Id. citing Ex. D at 3331-32.)  Though Plaintiff refers to Chase's fraud notes to allege that "Chase failed to take any effective action, disregarding known suspicious circumstances in merely noting" a hold remained on the account, a review of the page Plaintiff cites to indicates otherwise.  (Id.)  On June 8, 2021, a Chase representative contacted Plaintiff's accounting manager who "refused to verify [the] check" i.e., failed to indicate to Chase whether the check was counterfeit or not.  (Ex. D at 3331-32; Def.'s Opp. Br. at 13.)  After this call, the hold on the Adami, Inc. account initially remained, but the check was later processed and submitted for payment to Valley, which Valley accepted.  (Id.) Given Defendant contacted Plaintiff on June 8, 2021, and attempted to verify whether or not a fraudulent scheme was occurring one month before the three Florida checks were deposited between July 7, 2021, and July 9, 2021, the Court cannot accept Plaintiff's conclusory allegations that Defendant disregarded suspicious circumstances or failed to act.  What is clear from the

---

[5] Plaintiff submitted an unredacted version of this exhibit, Exhibit D, to the Court's chambers.

Proposed TAC and Chase's internal fraud notes, is that Plaintiff was advised of the allegedly fraudulent checks and did not inform Chase, in response to that inquiry, that the checks were counterfeit. As such, the Court cannot find that Plaintiff has plausibly alleged that Defendant's acceptance of the three Florida checks, one month after Defendant contacted Plaintiff, was done in bad faith. While Plaintiff's reply brief contains an argument that Plaintiff's accounting manager denies ever receiving a call from Chase, such allegations are not present in the Proposed TAC and Plaintiff does not contest the truth of Chase's fraud notes in the Proposed TAC.

Second, even if this Court were to accept as true the allegations that Chase failed to investigate the checks for purposes of this motion, as the court held in Wooten v. Altamaha Bank & Trust, allegations that a bank "exhibited a lack of good faith by failing to check adequately the signatures on each transaction and by violating its own policies" "do not constitute evidence of the bank's failure to pay the forged checks with 'honesty in fact.'" 2005 WL 1330775, at *3 (S.D. Ga. May 24, 2005) (analyzing good faith under the UCC as adopted in Georgia); see also Wachovia Bank, N.A. v. Fed. Rsrv. Bank of Richmond, 338 F.3d 318, 322–23 (4th Cir. 2003) (same). Though Plaintiff alleges, in conclusory fashion, that Chase acted with knowledge and disregard of "suspicious circumstances," the allegations in the Proposed TAC still fail to support a plausible inference that Chase had *actual knowledge* of any "wrongdoing tantamount to dishonesty or bad faith." See Regions, 2021 WL 4852268, at *11.

This conclusion is confirmed by looking at claims of actual knowledge outside the UCC. In a separate portion of the Eleventh Circuit's decision in Regions Bank v. Kaplan, the court was presented with an argument that a bank had knowledge of illegal activity occurring in a customer's account in the context of a common law fraud claim. 2021 WL 4852268, at *16. The Eleventh Circuit held that the evidence presented, a customer's bank statements and an affidavit by the

bank's president explaining the bank decided to close the account at issue due to increased volume of wire transfers, was insufficient to show that the bank "knew or should have known about the fraud." Id.  The court held that "[a]t most, the number of wires gave [the bank] reason to be suspicious about the account activity, but suspicion about account activity *is not the same as knowledge* of the underlying fraud." Id. (emphasis added).  Moreover, when assessing actual knowledge in other contexts, such as within aiding and abetting claims, Florida courts have found allegations that a bank has failed to comply with policies or procedures, or ignored "red flags," to be insufficient to plead actual knowledge.  See Groom v. Bank of Am., 2012 WL 50250, at *1-4 (M.D. Fla. Jan. 9, 2012) (granting motion to dismiss where allegations regarding "atypical and irregular banking practices" and failure to "adhere to the customary and accepted standard of care and fail[ure] to monitor incoming deposits and wires and other monies" failed to create a plausible inference of actual knowledge); Isaiah v. JPMorgan Chase Bank, N.A., 2017 WL 5514370, at *3-4 (S.D. Fla. Nov. 15, 2017) ("actual knowledge cannot be adequately pleaded by alleging that a bank should have known of the underlying tort by stating that 'a bank disregarded 'red flags' such as 'atypical activities' on a customer's account'")  (allegations that bank's "own records acknowledge the existence of fraudulent activity, based on certain withdrawal slips and other documents," including fraudulent activity detected through bank's internal controls, were insufficient to demonstrate actual knowledge because "even if [the bank] detected suspicious activity on the accounts as alleged," such activity "demonstrates knowledge of the symptoms of the Ponzi scheme, not [bank's] actual knowledge of the scheme itself"), aff'd sub nom. 960 F.3d 1296 (11th Cir. 2020); see also Wiand v. Wells Fargo Bank, N.A., 938 F. Supp. 2d 1238, 1244-47 (M.D. Fla. 2013); Lamm v. State Street Bank and Tr., 749 F.3d 938, 950 (11th Cir. 2014) ("alleging that a bank disregarded 'red flags' such as 'atypical activities' on a customer's account is

insufficient to establish knowledge") (citing <u>Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Grp. Ltd.</u>, 2008 WL 926513, at *6 (S.D. Fla. Mar. 31, 2008)).

Thus, because Plaintiff fails to plead sufficient factual allegations to support the inference that Defendant acted with actual knowledge "of the wrongdoing tantamount to dishonesty or bad faith," Plaintiff has not sufficiently alleged that Defendant failed to act with honesty in fact, as a component of good faith.  <u>Regions</u>, 2021 WL 4852268, at *11.

### ii.  Reasonable Commercial Standards of Fair Dealing

Plaintiff has also inadequately pled that Defendant failed to act in "observance of reasonable commercial standards of fair dealing."  Fla. Stat. § 673.1031(1)(d).  The fair dealing component of good faith is objective.  <u>See</u> <u>Regions</u>, 2021 WL 4852268, at *11 (quoting <u>Any Kind</u>, 830 So. 2d at 164–65 (citation omitted)).  As noted in the Official Comments, "fair dealing is a broad term that must be defined in context" and "is concerned with the ***fairness of conduct*** rather than the care with which an act is performed."  Fla. Stat. § 673.1031(1)(d), cmt. 4 (emphasis added).  The Seventh Circuit has described this standard as the "[a]voidance of advantage-taking." <u>State Bank of the Lakes v. Kansas Bankers Surety Co.</u>, 328 F.3d 906, 909 (7th Cir. 2003).

The Fourth District Court of Appeal of Florida adopted the fair dealing analysis set forth by the Supreme Court of Maine in <u>Maine Family Fed. Credit Union v. Sun Life Assurance Co. of Canada</u>, 727 A.2d 335, 343 (Me. 1999) in the context of determining whether a party qualified as a holder in due course under the UCC:

> The factfinder must ... determine, ***first, whether the conduct of the holder comported with industry or "commercial" standards applicable to the transaction and, second, whether those standards were reasonable standards intended to result in fair dealing***. Each of those determinations must be made in the context of the specific transaction at hand. If the factfinder's conclusion on each point is "yes," the holder will be determined to have acted in good faith even if, in the individual transaction at issue, the result appears

> unreasonable. Thus a holder may be accorded holder in due course status where it acts pursuant to those reasonable commercial standards of fair dealing —even if it is negligent— but may lose that status, even where it complies with commercial standards, if those standards are not reasonably related to achieving fair dealing.

<u>Any Kind</u>, 830 So. 2d at 165 (quoting <u>Maine Family</u>, 727 A.2d at 343).  The court noted that the fairness standard "should be measured by taking a global view of the underlying transaction and all of its participants."  <u>Id.</u>[6]

Courts analyzing this standard have stated "the question is not whether a bank acted in accordance with 'reasonable commercial standards,' but whether the bank's actions conformed to 'reasonable commercial standards ***of fair dealing.***'"  <u>Wachovia Bank</u>, 338 F.3d at 322–23 (alleged "failure to review high-dollar checks manually" was insufficient to demonstrate that a defendant did not conform to reasonable commercial standards of fair dealing) (emphasis in original).  A court considers "the fairness of [the bank's] actions, rather than any negligence on its part."  <u>Id.</u> at 323; <u>see also</u> <u>Regions Bank</u>, 2016 WL 1592752, at *19 (Florida court noting that good faith "does not test whether conduct is non-negligent") (citing Fla. Stat. § 673.1031); <u>see also</u> <u>Wooten</u>, 2005 WL 1330775, at *3.

Here, Plaintiff does not allege sufficient factual allegations which plausibly suggest that Defendant violated reasonable commercial standards intended to result in fair dealing.  The transactions at issue involve Chase and Adami, Inc. regarding Chase's acceptance and deposit of the three Florida checks into its customer, Adami, Inc.'s, bank account.  Thus, Defendant's duty

---

[6] However, some scholars believe that fair dealing under the UCC "can only apply to a transaction between persons who are dealing with each other" and "does not extend to third persons who are not party to the transaction."  <u>See</u> Good faith, 4 Hawkland UCC Series § 3-103:5, n. 2. Fairness "relates to the treatment of the other party to the transaction" and thus, some scholars argue the "duty to deal fairly cannot logically extend beyond a duty to deal fairly with the other party to the transaction (<i>i.e.</i>, to treat fairly the party with whom one is 'dealing')."  Robert T. Luttrell, III, <u>The Relation Between Good Faith, Fair Dealing and Ordinary Care in Payment Law Cases Under UCC Article 3, 4 and 4A</u>, 71 Consumer Fin. L.Q. Rep. 42, 44 (2017) (cleaned up).

to deal fairly here arguably did not extend beyond a duty to deal fairly with its customer, Adami, Inc.  See Good faith, 4 Hawkland UCC Series § 3-103:5, n. 2.  However, even taking a global view of the underlying transaction and all its participants to include Plaintiff, Defendant, and Adami, Inc., Plaintiff still fails to sufficiently allege that Defendant's actions constituted a lack of fair dealing.

For example, Plaintiff alleges that "[a] depositary does not act in accordance with industry standards, norms, and fair dealing in merely relying upon a hold on the availability of funds when it has knowledge of a suspected fraudulent check deposit," and therefore Chase did not act in good faith by "relying upon a hold on funds availability when it had knowledge that the fraudulent checks were suspected to be counterfeit."  (Proposed TAC ¶ 28.)  This is a conclusory allegation that is not entitled to the presumption of truth and the Court cannot rely on unsupported legal conclusions.  Further, as already discussed, the new allegations in the Proposed TAC and Chase's fraud notes demonstrate to the Court that Chase did not only rely upon a hold of funds in the Adami, Inc. account.

The Proposed TAC also contains conclusory allegations that Chase "disregarded industry and regulatory guidelines to detect and prevent check fraud" as well as "compliance requirements of the Bank Secrecy Act and its own 'Know Your Customer' policy implemented thereunder," (Id. ¶¶ 56-59), yet Plaintiff fails to sufficiently allege what industry guidelines, customary banking practices, and internal procedures Chase failed to observe, or how Chase's conduct amounted to a lack of fair dealing.[7]

---

[7] To the extent Plaintiff argues that an alleged violation of the Bank Secrecy Act is an additional failure by Defendant to support a claim of bad faith, the Court finds this argument unpersuasive. Whether or not Defendant failed to comply with the Bank Secrecy Act does not shed light on whether Defendant acted in observance of reasonable commercial standards of fair dealing in accepting the three Florida checks.  See e.g., Wiand v. Wells Fargo Bank, N.A., 86 F. Supp. 3d 1316, 1322 (M.D. Fla. 2015) (noting a "violation of a statutory or regulatory provision may be

Plaintiff's allegation referencing a "Know Your Customer" policy indicates that although Adami, Inc. answered "no" when asked whether wire transfers would occur or if there would be any "seasonal volume" in its account with Chase, Chase accepted 36 fraudulent checks with facial irregularities and "an almost immediate and massive outflow of funds from the Adami account via account and wire transfers" occurred.  (Id. ¶¶ 17, 19, 47.)  However, the Proposed TAC contains no factual allegations as to how this conduct amounts to a violation of a commercial standard "applicable to the transaction" of Defendant's acceptance of the three Florida checks or how this relates to Defendant's ability to deal fairly with Plaintiff in accepting and handling the three Florida checks.  Any Kind, 830 So. 2d at 165.

Likewise, Plaintiff alleges that Defendant "disregarded its own policies and industry norms providing that the bank must not ignore suspicious activity . . . whenever a suspicious transaction or series of transactions" has occurred and "the ongoing money laundering through the Adami account . . . necessitated Chase's 'immediate attention,'" for which it was required to file a Suspicious Activity Report and notify the appropriate enforcement authority. (Proposed TAC ¶¶ 58-59.)  As was deficient in the proposed second amended complaint, Plaintiff's characterization of Defendant's conduct is purely conclusory, with no facts describing how the alleged money laundering amounts to either a "reportable violation" under 12 C.F.R. § 21.11(d) or a violation of a commercial standard, or how any violation of this standard connects to Chase's later acceptance of the three Florida checks to suggest that Defendant did not deal fairly in accepting the three Florida checks for deposit.

---

evidence of negligence"); see also Regions Bank, 2016 WL 1592752, at *19 (Florida court noting that good faith "does not test whether conduct is non-negligent"). Therefore, any negligence of Defendant does not support an inference of bad faith, but rather goes to the question of ordinary care. Moreover, "[t]o the extent federal banking statutes such as the Bank Secrecy Act impose duties on banks, those duties extend to the United States, not a bank's customers." See Wiand, 86 F. Supp. 3d at 1322.

Moreover, the Court cannot overlook that prior to the acceptance of the three Florida checks in July 2021, Plaintiff concedes that starting on May 24, 2021, Defendant accepted 24 allegedly fraudulent checks in New York which were drawn on Plaintiff's account at Valley and deposited into Adami, Inc.'s account at Chase. (Compl. ¶ 9; Proposed TAC ¶ 9.) Plaintiff has not even attempted to assert claims against Chase as a depositary bank for these 24 checks, under New York or Florida law, which were made in similar amounts to the three Florida checks and possessed the same alleged facial irregularities as the three Florida checks. (See id ¶ 9 (noting check deposits ranging from $12,290.76 to $175,980.84 between May 24, 2021, and July 6, 2021).) Indeed, Plaintiff points to no distinguishing factors to differentiate the 24 checks accepted in New York with the three Florida checks. According to the Amended Complaint and Proposed TAC, at no point during the almost two-month period between Chase's acceptance of the first allegedly fraudulent check on May 24, 2021 in New York, and its acceptance of the first of the three Florida checks on July 7, 2021, did Plaintiff alert Defendant or Valley as to any unusual circumstances regarding the checks. Although Plaintiff alleges that the three Florida checks were inconsistent with Adami, Inc.'s transactional history, Plaintiff cannot ignore the fact that according to its Amended Complaint and Proposed TAC, by the time the three Florida checks were deposited, 24 allegedly fraudulent checks with similar alleged facial irregularities had already been accepted for deposit by Chase and honored by Valley without any rejection. Furthermore, Defendant contacted Plaintiff regarding potentially fraudulent checks in June 2021. Thus, even assuming these checks were apparently larger than Adami, Inc.'s prior transactions, this conduct at best amounts to potentially suspicious circumstances. However, although a failure to investigate suspicious circumstances is suggestive of negligence by Chase, the focus of fair dealing is on "the fairness of [the bank's] actions, rather than any negligence on its part." Wachovia Bank, 338 F.3d at 323.

18

The Proposed TAC contains no factual allegations to support a conclusion that Chase's actions were **_unfair_** to Plaintiff.

In short, Plaintiff has simply failed to plausibly allege that Chase did not comply with "reasonable commercial standards of fair dealing —even if it [was] negligent . . ." Any Kind, 830 So. 2d at 165 (quoting Maine Family, 727 A.2d at 343).  The Proposed TAC contains no allegation which suggests that Defendant failed to "deal fairly in conducting the transaction" _i.e.,_ in accepting the three Florida checks for deposit.  Fla. Stat. § 673.1031(1)(d), cmt. 4.

The Court also notes that Plaintiff fails to identify a single case where a depositary bank's failure to investigate three checks over a three-day period satisfied the factual predicate necessary for alleging bad faith under the UCC.  Indeed, Plaintiff does not cite any case with the same or similar factual circumstances at issue here to even plausibly suggest that Defendant's actions constitute bad faith.  While Plaintiff cites a line of cases to illustrate bad faith and proximate causation, most of Plaintiff's cited cases neither involve the factual circumstances of a drawer asserting a claim against a depositary bank to which it is not a customer, which is at issue here, nor discuss the reasonable commercial standards of fair dealing of a depositary bank under the UCC.  Thus, Plaintiff has not provided the Court with any cases to support the inference that the acceptance of the three Florida checks could amount to bad faith under Florida's UCC.

For example, Plaintiff cites to Basch v. Bank of America. Nat. Tr. & Sav. Ass'n, 139 P.2d 1, 12 (Cal. 1943), which affirmed a jury charge that if a jury were to find that a defendant bank was negligent in failing to detect forgeries, then the bank would be responsible "for all loss to the plaintiff proximately caused by that negligence."  However, unlike the facts at issue here, the plaintiff in Basch was a customer of the defendant bank.  The remainder of Plaintiff's cited cases present similar concerns.  In Critten v. Chemical National Bank, 63 N.E. 969, 973 (N.Y. 1902),

the plaintiff, a customer of the defendant bank, sought repayment of checks that had been forged over a two-year period by the plaintiff's employee and made payable to cash and collected from defendant, or deposited into his own account at a different bank. Furthermore, in contrast to Critten, where the court noted "the folly of the bank in paying to a clerk a check of [forger's] employers which had plainly been altered, without making inquiry as to the reason or authority for the alteration," here, Defendant made an inquiry to Plaintiff. Id.

In Pearson v. Deutsche Bank AG, 2023 WL 5905958 (S.D. Fla. Sept. 11, 2023), plaintiffs, who were customers of the defendant bank, asserted a claim of common law negligence against the bank relating to the bank's duty to monitor certain transactions conducted by the plaintiffs' agents. In Anderson v. Branch Banking & Tr., 119 F. Supp. 3d 1328, 1353-54 (S.D. Fla. 2015), the defendant bank's customers alleged that the defendant bank negligently opened accounts based on forged documentation. In Experi-Metal, Inc. v. Comerica Bank, 2011 WL 2433383 (E.D. Mich. June 13, 2011), the plaintiff, a customer of the defendant bank, alleged that the bank violated a UCC provision by allowing unauthorized transfers drawn on the plaintiff's account. These factual scenarios are radically different from the circumstances at issue here. Although Plaintiff attempts to compare the conduct of depositary banks with drawee or payor banks, Plaintiff disregards the different rights and obligations associated with each. The fairness of conduct and the reasonable commercial standards of fair dealing of a drawee bank that pays the check of its own customer, the drawer, cannot be compared to the fairness of conduct and reasonable commercial standards of fair dealing of a depositary bank who receives the check for collection and has no relation to the drawer. Those standards are directed to different transactions and aspects of commercial conduct. Therefore, these cases do not provide support for Plaintiff's claim.[8]

---

[8] Plaintiff's citation to McAdam v. Dean Witter Reynolds, Inc., 896 F.2d 750, 762 (3d Cir. 1990) is also unpersuasive. In that case, a payee asserted a claim against an initial collecting bank

It appears the most analogous case Plaintiff cites to is the case of Pavex, Inc. v. York Fed. Sav. & Loan Ass'n, 716 A.2d 640 (Pa. Super. Ct. 1998). In Pavex, the plaintiffs' employee, Heck, forged checks payable to various former and current employees of the plaintiffs. Id. at 641-42. The forged checks were drawn from the plaintiffs' account at a different bank and deposited by Heck into her own bank account at defendant York Federal. Id. The plaintiffs asserted a claim of conversion under the UCC against York Federal. Id. at 643. On appeal, the court found there was sufficient evidence to affirm the jury's finding of bad faith and noted that the bank "violated its own policies for over two years in a scheme involving almost 900 transactions" and "the bank's branch manager deliberately chose to ignore perceived irregularities in Ms. Heck's transactions." Id. at 646. Although Pavex bears some similarity to the facts of this case in the sense that the drawer on an account at a different bank asserted a claim against a depositary bank, this appears to be the only similarity. Unlike Pavex, this case does not involve a check fraud scheme over a two-year period but rather three checks which were accepted for deposit within a three-day period. Furthermore, the checks in Pavex were payable to a different individual than the one presenting as the depositor. Here, however, the checks were payable to Adami, Inc. and deposited into Adami, Inc.'s account.

Plaintiff's reliance on Contour Indus., Inc. v. U.S. Bank, N.A., 437 F. App'x 408, 409 (6th Cir. 2011) is likewise unpersuasive. In Contour, the plaintiff's employee took checks payable to the plaintiff but deposited them into the employee's own account at the defendant bank. Id. at 410. In affirming the district court's denial of defendant's motions for judgment as a matter of law and a new trial, the court noted that the district court found that a reasonable jury could find that the

---

and in finding a breach of the UCC's good faith requirement, the Third Circuit noted that evidence was presented that the collecting bank ***deliberately*** violated its own policies. Plaintiff alleges no factual allegations to suggest that any violation of Chase's policies was deliberate.

defendant bank failed to act in good faith "when it deposited the forged checks into [the employee's] personal account over a three-year period without the requisite check-cashing resolution from [plaintiff]" in accordance with the bank's policy under the bank's procedural manual. Id. at 410, 418. Although Contour appears to have some similarity to the facts of this case because in both cases, the plaintiff is asserting a claim against a depositary bank where it is not a customer, here, unlike Contour, the checks were made payable to Adami, Inc. and deposited into Adami, Inc.'s account. Moreover, in Contour, the court specifically noted the importance of the bank's policy when accepting checks made payable to a company but deposited into a personal account. Here, the Court does not find any non-conclusory allegations which support a similar bank policy. Moreover, the checks which allegedly were the proximate cause of Plaintiff's loss, the three Florida checks, were not deposited into the Adami, Inc. account over a three-year period but rather a three-day period. Contour is simply not on point.

In short, while the Court has exhaustively reviewed all of the cases that Plaintiff contends demonstrates bad faith, and has discussed why those cases are not persuasive, nevertheless the Court notes that the key in this case is that with regards to both components of bad faith, Plaintiff's own Proposed TAC demonstrates that Chase did not act in bad faith when it attempted to determine whether or not a fraudulent check scheme was being perpetrated. Moreover, when Plaintiff was given the opportunity to stall any further fraudulent conduct, it did not take advantage of the opportunity and did not advise Defendant that any untoward conduct was being engaged in. Thus, the Court cannot find that Plaintiff has sufficiently alleged that Chase acted in bad faith in accepting the three Florida checks for deposit.[9] The Court concludes that amendment would be futile, and it is therefore ordered that Plaintiff's motion to amend is denied.

---

[9] The Court also notes that in alleging that "Chase failed to exercise ordinary care and good faith" Plaintiff appears to conflate the notions of fair dealing, as a component of good faith, with

## IV.    CONCLUSION

For the reasons set forth above, it is hereby **ORDERED** that Plaintiff's motion for leave to amend/correct the complaint, (D.E. No. 46), is **DENIED.** [10]

_____
s/ Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

**Dated:** August 5, 2025

---

ordinary care. (See Proposed TAC ¶ 50.) However, whether Defendant failed to exercise ordinary care is a separate inquiry from whether Defendant failed to exercise good faith. Indeed, the two are separate and distinct concepts under the UCC. "Failure to exercise **ordinary care in conducting a transaction** is an entirely different concept than failure to **deal fairly in conducting the transaction**." UCC § 3-103, cmt. 4 (emphasis added); Fla. Stat. § 673.1031. Professor Luttrell suggests that under the UCC, "fair dealing requires a fair treatment of the other party to the transaction, with whom one is dealing, while ordinary care essentially means reasonable prudence in protecting oneself." Robert T. Luttrell, III, The Relation Between Good Faith, Fair Dealing and Ordinary Care in Payment Law Cases Under UCC Article 3, 4 and 4A, 71 Consumer Fin. L.Q. Rep. 42, 43 (2017). This Court has already held that Plaintiff has adequately pled a comparative negligence claim under UCC § 3-404 (Fla. Stat. § 673.4041) with regards to the three Florida checks. The Official Comments of this section point to Comment 4 of UCC § 3-405 "as a guide to the type of conduct that could give rise to recovery under UCC § 3-404(d)." Example Cases 5, 6, and 7 to Comment 4 of UCC § 3-405, describing the type of conduct that could amount to a failure to exercise ordinary care, clearly support the viability of Plaintiff's comparative negligence claim and demonstrate to the Court, as it previously held, that the allegations in Plaintiff's Amended Complaint are more than sufficient under the pleading standards of Iqbal and Twombly to state a cause of action against Chase under UCC § 3-404(b) and (d) (Fla. Stat. §§ 673.4041(2) and (4)) for failure to exercise ordinary care in handling the three Florida checks. However, the Court finds that the Proposed TAC still fails to provide a basis for asserting claims based upon the eight New York checks deposited after the three Florida checks.

[10] As the Court finds that Plaintiff has not sufficiently alleged bad faith, the Court's inquiry does not reach the issue of proximate cause. Further, as this motion is decided on grounds of futility, the Court need not reach Plaintiff's additional arguments.